RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 10/14/05

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| JACKIE LAMBERT, et al. | Civil Action No. 6:04-CV-00985 |
| versus | Judge Tucker L. Melançon |
| STATEWIDE TRANSPORT, INC. | Magistrate Judge Mildred E. Methvin |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Rec. Doc. 24] filed by defendant Statewide Transport, Inc., plaintiffs' Opposition [Rec. Doc. 28], defendant's Reply [Rec. Doc. 31], and defendant's Supplemental Memorandum in Support thereof [Rec. Doc. 37]. For the following reasons, defendant's motion will be denied.

*I. Background*

This suit was filed on April 30, 2004. Plaintiffs' allege that Statewide Transport, Inc. (Statewide) failed to pay the statutorily required overtime rate for all hours worked in excess of forty hours per week in violation of 29 U.S.C. § 207(a), the

1

Fair Labor Standards Act.

Statewide is a Louisiana corporation engaged in the delivery business. (*Defendant's Statements of Uncontested Facts*, No. 1; *Complaint*, ¶ 3). It is a carrier that hauls property. (*Defendant's Statements of Uncontested Facts*, No. 1). Some of the hauling is involved in interstate commerce. (*Defendant's Statements of Uncontested Facts*, No. 4; *Plaintiffs' Opposition*, p. 2). Each employee was engaged in work activities categorized as drivers/transporters, driver's helpers, loaders/stockers, and/or mechanics. (*Defendant's Statements of Uncontested Facts*, No. 2; *Complaint*, ¶ 5).

## II. Standard for Summary Judgment

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were

uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.*, 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

*III. Analysis*

*Applicability of 29 U.S.C. § 207(a): The Fair Labor Standards Act.*

Plaintiffs allege that Statewide failed to pay the statutorily required overtime rate for all hours worked in excess of forty hours per week. Defendant contends that the Fair Labor Standards Act (FLSA) does not apply to the plaintiffs, as each plaintiff falls within a class of workers that are exempt from FLSA coverage under 29 U.S.C. § 213(b)(1), the Motor Carrier Act. Plaintiffs aver that the Motor Carrier Act exemption is inapplicable because each plaintiff, in his or her employment duties, fails to satisfy the requisite interstate commerce element of the statute.

29 U.S.C. § 207(a)(1), commonly known as the Fair Labor Standards Act, provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

The Act further provides applicable definitions. "Employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employee" means "any individual employed by an employer."

29 U.S.C. § 203(e)(1). "Commerce" means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

The parties agree that Statewide is an "employer," and that all of the plaintiffs qualify as "employees." (*Defendant's Statements of Uncontested Facts*, No. 2; *Complaint*, ¶ 5). The defendant disputes, though, that plaintiffs Jackie Lambert and Tashon Cooper were employees of Statewide at all relevant times in question. (*Defendant's Motion*, pp. 3-4). Further, the parties agree that Statewide was engaged in "commerce," as defined by the FLSA. (*Defendant's Statement of Uncontested facts*, No. 4; *Plaintiff's Opposition*, p. 2). Thus, the pertinent provisions of the FLSA are applicable to Statewide and its employee relations.

*Applicability of 29 U.S.C. § 213(b)(1): The Motor Carrier Act Exemption.*

29 U.S.C. § 213(b)(1), known as the Motor Carrier Act exemption, provides:

> The provisions of section 207 of this title shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service

pursuant to the provisions of section 31502 of Title 49.[1]

Because there is no concurrent jurisdiction between the FLSA and the Motor Carrier Act, if an employee falls within the Secretary of Transportation's jurisdiction pursuant to the Motor Carrier Act exemption, then the FLSA does not apply. *Shew v. The Southland Corp.*, 370 F.2d 376, 380 (5th Cir. 1966).

For the Motor Carrier Act exemption to apply, two factors must be satisfied. First, the employer must be classified a "motor carrier" under the Act, subjecting the employer to the jurisdiction of the Secretary of Transportation. As used in the Act, the term "motor carrier" means, "a person providing motor vehicle transportation for compensation." 49 U.S.C.A. § 13102(12). The parties do not dispute that Statewide is a "motor carrier."

The second factor focuses on the employee. To qualify for the exemption, the employee must be engaged "in activities of a character directly affecting the safety

---

[1] 49 U.S.C. Section 31502 provides: "This section applies to transportation (1) described in sections 13501 and 13502 of this title." 49 U.S.C.A. Section 13501 provides, "The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier(1) between a place in (A) a State and a place in another State; (B) a State and another place in the same State through another State."

of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2. This bipartite analysis considers job function and then involvement in interstate commerce.

The Regulations identify exempted job functions. 29 C.F.R. § 782.2(b)(2) provides:

> The exemption is applicable, under decisions of the U.S. Supreme Court, to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined (i) as that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.

The Regulations further provide applicable definitions:

> Driver: A "driver," is an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce. This definition does not require that the individual be engaged in such work at all times; it is recognized that even full-duty drivers devote some of their working time to activities other than such driving. "Drivers," as thus officially defined, include, for example, such partial-duty drivers as the following, who drive in interstate or foreign commerce as part of a job in which they are required also to engage in other types of driving or nondriving work: Individuals whose driving duties are concerned with transportation some of which is in intrastate commerce and some of which is in interstate or foreign

7

commerce within the meaning of the Motor Carrier Act; individuals who ride on motor vehicles engaged in transportation in interstate or foreign commerce and act as assistant or relief drivers of the vehicles in addition to helping with loading, unloading, and similar work. 29 C.F.R. § 782.3

Loader: A "loader," is an employee of a carrier subject to section 204 of the Motor Carrier Act (other than a driver or driver's helper as defined in §§ 782.3 and 782.4) whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. A "loader" may be called by another name, such as "dockman," "stacker," or "helper," and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized. 29 C.F.R. § 782.5.

Mechanic: A "mechanic," for purposes of safety regulations under the Motor Carrier Act is an employee who is employed by a carrier subject to the Secretary's jurisdiction under section 204 of the Motor Carrier Act and whose duty it is to keep motor vehicles operated in interstate or foreign commerce by his employer in a good and safe working condition. It has been determined that the safety of operation of such motor vehicles on the highways is directly affected by those activities of mechanics, such as keeping the lights and brakes in a good and safe working condition, which prevent the vehicles from becoming potential hazards to highway safety and thus aid in the prevention of accidents. Mechanics perform work of this character where they actually do inspection, adjustment, repair or maintenance work on the motor vehicles themselves (including trucks, tractors and trailers, and buses) and are, when so engaged, directly responsible for creating or maintaining physical conditions essential to the safety of the vehicles on the highways through the correction or prevention of defects which have a direct causal connection with the safe operation of the unit as a whole. 29 C.F.R. § 782.6.

In applying the Regulations to the record before the Court, each plaintiff will be categorized for Motor Carrier Act exemption purposes.

1. <u>Jackie Lambert</u> - In her initial complaint, Jackie Lambert described her position with Statewide as a "stocker driver." (*Complaint*, ¶ 8). In her deposition, Lambert stated that she was hired as a driver and her duties included loading and unloading her van. (*Lambert dep.*, pp. 6-8) . Based on her admissions, Lambert is properly classified as a "driver"as defined in 29 C.F.R. §782.3.

2. <u>Tashon Cooper</u> - In the Second Supplemental Complaint, Tashon Cooper described his position with Statewide as a "driver and/or truck unloader and/or freight separator and/or small mechanic." (*Second Supplemental Complaint*, ¶ 8A.). In response to an interrogatory, Cooper stated that he ran delivery routes (*Cooper Int.*, No. 12), "did small mechanic work . . . including changing breaks, changing fuel filters, changing air condition blowers, and getting them started after running out of gas on the side of the road." (*Id.*; *Cooper dep.*, pp. 7-8). Based on his admissions, Cooper is properly classified as a "mechanic" as defined in 29 C.F.R. § 782.6.

3. <u>Adam Mercier</u> - In the Second Supplemental Complaint, Adam Mercier described

9

his position with Statewide as a "driver and/or truck loader." (*Second Supplemental Complaint*, ¶ 8B.). In response to an interrogatory, Mercier stated that he "was employed as a truck driver, and delivered freight to customers." (*A. Mercier Int.*, No. 12). His duties included delivery, loading, and unloading. (*A. Mercier dep.*, pp. 7-8). Based on his admissions, Mercier is properly classified as a "driver" as defined in 29 C.F.R. § 782.3.

4. <u>Tonya Sam</u> - In the amended complaint, Tonya Sam described her position with Statewide as a "driver and/or truck loader." (*Second Supplemental Complaint*, ¶ 8C.). In her deposition, Sam stated that she delivered parts. (*Sam dep.* p.14). The Court finds that, based on the assertions in the amended complaint, that Sam is properly classified as a "driver," or alternatively, a "loader," as defined in 29 C.F.R. §§ 782.3 and 782.6.

5. <u>Liza Mercier</u> - In the Third Supplemental Complaint, Liza Mercier described her position with Statewide as a "driver and/or truck loader and/or freight separator." (*Second Supplemental Complaint*, ¶ 8D.). In response to an interrogatory, Mercier stated that she loaded and unloaded her van and made deliveries to customers. (*L.*

*Mercier Int.*, No. 12). Based on her admissions, Mercier is properly classified as a "driver" as defined in 29 C.F.R. § 782.3.

6. <u>Damon Arceneaux</u> - In the Third Supplemental Complaint, Damon Arceneaux described his position with Statewide as a "driver and/or truck loader and/or freight separator." (*Second Supplemental Complaint*, ¶ 8B.). In response to an interrogatory, Arceneaux stated that he was hired as a "truck driver and made deliveries for Statewide." (*Arceneaux Int.*, No. 12). He further acknowledged in his deposition that loading was a part of his job responsibilities. (Arceneaux dep., pp. 10-11). Based on his admissions, Arceneaux is properly classified as a "driver" as defined in 29 C.F.R. § 782.3.

Accordingly, the plaintiffs fit within the Regulations' definitions of "driver," "loader," or "mechanic." However, plaintiffs argue that the Motor Carrier exemption does not apply, since each employee's work responsibilities did not "directly affect the safety of . . . transportation in interstate or foreign commerce." 29 C.F.R. § 782.2(b)(2).[2]

---

[2] 29 C.F.R. Section 782.7 provides, "What constitutes such transportation in interstate or foreign commerce, sufficient to bring such an employee within the regulatory power of the

11

The Regulations provide direction for analyzing interstate commerce. "Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce . . . The result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce. 29 C.F.R. § 782.7(b)(1).

In *Merchants Fast Motor Lines, Inc. v. I.C.C.*, the Fifth Circuit outlined the standard for differentiating between interstate commerce and intrastate commerce. 5 F.3d 911, 917 (5th Cir. 1993). "Whether transportation between two points in a single state is interstate or intrastate depends on the 'essential character' of the shipment." *Id.* "The critical factor in determining the shipment's essential character is the fixed and persisting intent of the shipper at the time of the shipment." *Id.* "The

---

Secretary of Transportation under section 204 of that act, is determined by definitions contained in the Motor Carrier Act itself. These definitions are, however, not identical with the definitions in the Fair Labor Standards Act which determine whether an employee is within the general coverage of the wage and hours provisions as an employee 'engaged in (interstate or foreign) commerce.' For this reason, the interstate commerce requirements of the section 13(b)(1) exemption are not necessarily met by establishing that an employee is 'engaged in commerce' within the meaning of the Fair Labor Standards Act when performing activities as a driver, driver's helper, loader, or mechanic, where these activities are sufficient in other respects to bring him within the exemption."

totality of the facts and circumstances will determine whether a shipper has the requisite intent to move goods continuously in interstate commerce." *Id.*

"The test, then, is whether a particular employee's duties have a substantial effect on the safety of operation of motor vehicles transporting property in interstate commerce, . . . not whether a substantial part of the employee's duties affect the safety of interstate operation of motor vehicles." *Sinclair v. Beacon Gasoline Co.*, 447 F.Supp. 5, 9 (W. D. La. 1976) *aff'd*, 571 F.2d 978 (5th Cir. 1978) *citing, Levinson v. Spector Motor Service*, 330 U.S. 649, 671 (1947).

The record shows that some of the plaintiffs made deliveries across state lines. Jackie Lambert drove and trained in Texas. (*Lambert dep.*, pp 10-11; *Lambert Affidavit,* Plaintiffs' Exhibit E). Tashon Cooper made deliveries to Houston, Texas. (*Cooper dep.*, pp. 17, 20; *Cooper Affidavit*, Plaintiffs' Exhibit C). Adam Mercier made deliveries into Texas. (*A. Mercier Affidavit*, Plaintiffs' Exhibit D). Tonya Sam drove to Houston, Texas. (*Sam dep.*, p. 15). Statewide disputes that each employee's interstate travel was limited to these few instances, but offers no factual support to the contrary. (*Defendant's Reply Memorandum*, p. 2 FN 1). Accordingly, issues of material fact remain as to whether each employee's job duties "substantially affected"

13

the safe operation of motor vehicles engaged in interstate commerce.

The record is insufficient for the Court to determine whether the Motor Carrier Act exemption applies. Without a detailed review of each plaintiff's involvement in delivery across state lines, the overall deployment of company vehicles across state lines, or every shipper's "fixed and persisting intent" as to whether the freight was a part of a larger movement of goods in interstate commerce, the Court cannot rule on whether Statewide or any of its employees were involved in interstate commere.

"The employer claiming exemption bears the burden of proving that the exemption claimed is valid." *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). Exemptions to the FLSA are to be construed narrowly. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). Accordingly, defendant's motion for summary judgment will be denied.

*IV. Conclusion*

As the defendant has failed to meet its burden, the Court will deny defendant Statewide Transport, Inc.'s Motion for Summary Judgment.